Number 22, 1222. In re Arcapita Bank. Mr. Honeywell. May it please the court. Good morning, your honors. Robert Honeywell, K&L Gates for Bahrain Islamic Bank, which I will refer to in my argument as Arcapita. And the appellee here is the Committee of Unsecured Creditors for Arcapita Bank. Your honors may have noticed that this case has been around for a very long time. It was filed in 2013, so we're now at 10 years. And the number one question that our client, Bisbee, has been asking for a very long time is why is this in the U.S. courts? Why is this Bahraini law contract dispute between two Islamic finance banks who do business solely in Bahrain and who are subject to the regulatory authority of their own banking regulator, the Central Bank of Bahrain, which I will refer to as the CBB. Why is this dispute here? And there are basically four events that precipitated it being in the U.S. courts. The first is that Arcapita, in March of 2012, decided to invest $30 million of its own money in interbank Sharia compliant, that is, Islamic finance investments. These are interbank investments called Marabahas. It decided to invest its own money with Bisbee, our client. They had a several year relationship in which they had these interbank investments. And Arcapita decided to invest its own money with Bisbee in these investments, and it called Bisbee to make these investments. It said... And then Bisbee said, well, why don't you wire the money to our account in New York, right? That's exactly right. Arcapita selected the U.S. dollar as the currency. They could have done it... Arcapita selected the U.S. dollar as the currency, but Bisbee said, okay, we'll deal with you in U.S. dollars. Why don't you wire the money to our account in New York? That's exactly what they did. So isn't that a purposeful use of the correspondent account in New York? And haven't we said that that suffices for personal jurisdiction? We are not contesting that it is a purposeful availment of the U.S. banking system because they did agree that it would be in dollars and they would accept it there. But as your honors know, the test for personal jurisdiction is a bit more complex than that. It's a two-part test. One is minimum context, which has a two-part test, and then the other is reasonableness. The minimum context test is both purposeful availment and did the use, did the context in the U.S. give rise to or relate to the claims and the complaints? And it's the second prong of minimum context, which we are hotly contesting. That it didn't give rise to the claim. That's exactly right. But that transfer of money to New York is exactly the transfer that the committee is trying to avoid, right? For only one of the claims. Only one of the claims in the complaint is preference, and that's an avoidance claim. That's it. The preference. So then you would agree that that claim, the purposeful use of the correspondent account in New York, does give rise to that claim? We would say that it does give rise to that claim, but we would still contest it on the grounds of the second prong of the jurisdiction test, which is reasonableness. And the reason I laid out all these various acts that our capita initiated is from our standpoint, Visby's standpoint, they did not initiate this transaction. Our capita did. So from the reasonableness. So you think it's still not reasonable? We think it's still not reasonable. On the breach of contract claim, the transfer to New York is part of the transaction. That is the transaction where the allegation is that there was a breach of contract, right? It initiated the Marabaha transaction, but and that created the contract. And the committee's own complaint says that created the contract. But the complaint doesn't contest that the transfer was improper. In fact, the complaint says. Why would it have to? So, you know, an element of the breach of contract claim is performance of the contract. Right. Your performance in the contract was the transfer of the money to New York, right? That was just part of the contract. The whatever. That's part of the performance, at least part. Understood. Understood. Yeah, of course. So if the test is that one of the elements has to like that has to be related to the forum for their purposeful use, then the performance of the contract was the purposeful use. Right. The wire was the contract. We want to do a placement with you. Busby says, OK, why are the money to our account in New York? And so that's the performance of the contract. Now there's a claim that the contract was breached because they didn't pay the money back. But you would have the elements of performance that our capital performed by sending the money did involve the purposeful use of the New York account. Right. Yes. Again, the purposeful use is not an issue here. The issue is where did the conduct of the rise? Yeah, exactly. Well, I would not have to say that the use of the forum is unlawful. You just have to say that one of the elements of the claim involves the purposeful use of the forum. Right. One of the elements of the claim, because, of course, the wire created the contract. And that's the predicate of the claim, of course, is that the wire had to happen. You had to create a contract. So why isn't that sufficient to say that the purposeful use here is right? Because the conduct of the complainant, the wrongful conduct that the committee complains of in its complaint happened in Bahrain. The only thing that happened in this transaction. So they got the money in New York, but they kept the money in Bahrain, and so therefore you can't sue them for breach of contract in New York. That's our position, yeah, because the wrongful conduct occurred over there. And we think that's consistent with a long line of this court's precedents. Not just Dow, which we saw extensively, which has very similar facts. There were wires in the U.S. using correspondent bank accounts, but the behavior that people complained of occurred in Lebanon and Dow. And there have been a series of cases even since Dow and after briefing close that took the exact same position. There was, if it pleases the court, I can refer to these other cases that literally have happened in the past few months. They're implementing Dow, they're saying just because you use New York correspondent bank accounts and it's part of the relationship that gives rise to the lawsuit, that's not enough. Where did the wrongful conduct happen? The first of those cases that follows Dow is Reed International, the Afghanistan International Bank. February 21, 2023, Southern District of New York. The site is 2023, Westlaw, 2138600. And then very similar to the facts of Dow, Elgosane v. Bank Audi, SAL, Southern District of New York, February 23rd, 2023. And the site is 2023, Westlaw, 3005524. Those are both Southern District of New York cases implementing Dow. And then this court, just a few weeks ago, issued Eduardo v. Roman Catholic Bishop of Providence. Well, can I just ask, so I understand you have these cases, but what is the reasoning for that? So if you perform a contract in connection with the forum in New York, why would it be the case that because you just went home to Bahrain and there you refused to perform your end of the bargain, then all of a sudden it's unfair to call you to account in New York? Because the focus of jurisdiction is where did the wrongful act occur? That is the focus in the long line of precedence. So there was no wrongful act in the United States. Everybody concedes that the wire was valid. The wire created the contract. The behavior complained of here happened in Bahrain. The contract was governed by Bahraini law. Everybody concedes that the contract was governed by Bahraini law. Plus, there was a current regulatory- So what do we do? So I understand you have these cases, but so you're just saying, we have said, as long as the purposeful availment of the forum gives rise to one of the elements of the claim, that's enough. But you're saying, actually, it's not just one of the elements. It has to be one of the acts alleged to be wrongful. So it has to be the culmination of the claim. It's that the claims and the complaint, the causes of action in the complaint, have to arise from the U.S. action and relate to it in a way that's not just incidental. And this is exactly what this court's precedents say. And you can't just use a correspondent bank account. The actual wrongful behavior has to happen in the United States. There's a long line of precedence for that. And not just the Dow case. I can go back to 1964, the Gelfand v. Tanner-Mutter Towers case, which we cite in our- Tours, sorry, which we cite in our papers. The 2005 case, Johnson v. Ward, which is a New York Court of Appeals case, which this court has cited favorably in the Leachy cases, and that it also cited favorably in the recent Eduardo case. And then, of course, the Dow cases and the ones I just cited. Jurisdiction is very carefully done. The wrongful act has to occur in the United States. And all of these cases say, particularly when dealing with the New York forum, that the wrongful act has to happen in New York. Just because there was a causal chain of event that happened in New York that led to the wrongful behavior somewhere else, that is not enough. The court, particularly in Dow, and in these other cases I cited, cited the use of the correspondent bank accounts. Of course, the use of the New York wires, the use of the correspondent bank accounts, was a necessary predicate to everything that happened later. That is not enough, according to this court's precedence. It has to be a strong connection to the wrongful behavior. And that's our contention here, is that the wrongful behavior did not occur in the United States. And they can't point to that. They can only point to the use of the New York wire. And I would also point out, I've been litigating for 30 years in bankruptcy cases. If merely the use of U.S. dollars and merely the routing of U.S. dollars through a correspondent bank account is enough to bring every single claim related to that contract into the jurisdiction of the U.S. courts, then what's the limit? Literally every dollar-based transaction around the world would result in litigation here. And I just don't think that's what this circuit's precedence say. I also don't think it's what the U.S. Supreme Court's precedence say. There has to be a line. And our belief is that under these facts, all of the behavior that the committee complains of, that our capital complains of, occurred over there. And on top of that, we think it's unreasonable to bring them into the U.S. courts because other than that New York wire, that momentary New York wire, the history of the client's relationship was in brain. They negotiated the contract in brain. They did their business only in brain. Our client did not do business in the United States. It had zero context with the United States. Other than this momentary wire. So that's our position on jurisdiction. And then as to comedy, we also think the facts of this case show that this belongs over there in brain. Shortly after the parties entered in this dispute about returning the money, our capital complained to the regulator, the Central Bank of Brain. The regulator issued a directive telling Bisbee, return the money. Bisbee immediately objected and had meetings as well as extensive letters saying, look, if you make us do this, you are impinging on Bahraini sovereignty. And we. Well, the Bahraini Central Bank, in fact, said either return the money or get permission from the U.S. Bankruptcy Court, right? Yes, that's exactly what they said. So if the Bahraini Central Bank, which I take it has legal authority to issue binding directives. Yes. This is one of those directives. Said, go get permission from the U.S. Bankruptcy Court and abide by those proceedings. How can there be a conflict between U.S. law and Bahraini law if there's a Bahraini directive that says go comply with the U.S. Bankruptcy Court? Because we took the, Bisbee took the position that this is, they immediately objected and they took the position that this was permitted under Bahraini law. We do not have to comply. Yes, but has the Bahraini Central Bank revised that directive? They have never enforced it in 10 years. They've enforced it, but it is the last authoritative statement on this question. It's the only. You're asking us to protect Bahraini sovereignty to a degree that the Bahraini authorities don't want to, right? Well, no, we're asking this, the U.S. courts not to interfere with the regulatory proceeding over there because. You're saying there is a regulatory proceeding over there? Yeah, we are. There is a proceeding? It's open. Yeah, we object that they never enforced it. So even though the Bahraini Central Bank issued a directive that you agreed was binding that said go comply with the U.S. Bankruptcy Court proceeding, you're telling me there is also a proceeding there that conflicts with the U.S. Bankruptcy Court proceeding? Everybody, everybody, yeah, we do. We believe it conflicts because we contested it and the regulator itself never took any further action and it could have at any moment. Why didn't it? There's nothing in the record about that, but it's open and it is a matter of Bahraini regulatory law. Why don't, why didn't the committee go there? Why didn't our capita go there and respond? They never responded even though Bisbee did. Bisbee went to the regulator and said in detail we. So if our capita is not responding, then how is there an administrative proceeding going on in Bahrain if one of the parties to the controversy is not part of it? It's an open directive right now and everybody including the Bankruptcy Court and I think the committee takes the same position is that it's pending. It's a pending directive. They've never enforced it. So why wouldn't they enforce it there or why didn't the committee go over there and start a judicial proceeding there to enforce it? Why didn't our capita? Okay. I think we have that argument. Thank you very much, Mr. Honeywell. You reserve time for rebuttals. I do. Thank you, Your Honor. Again. But let's turn to the afterly, Mr. LeBlanc. Morning, Your Honors. May it please the Court. Andrew LeBlanc of Milbank LLP on behalf of the Official Committee of Unsecured Creditors of our Capita. Your Honors, I think it's important to reframe what the issue was before the courts below and what the wrong that we are asserting is. There is no question that there was a transfer of $10 million and then two other transfers of $10 million in the days immediately preceding the bankruptcy. But those aren't the only facts. It's not just the creation of that contract that we complained about. In fact, it's far greater than that. And what the court below found on an undisputed record was that that transfer on March 14th, five days before our Capita filed for a bankruptcy petition in the United States, was part of a scheme to repay Bisbee ahead of all other creditors. How do we know that? We know that because there is an undisputed factual record that supports that. There was a telephone call that we have a transcript of that the court below relied upon that says on the day the transfer was made, our Capita saying, if I say I'm going to pay you your money, would you be pleased or otherwise? Our Capita then made the transfer into Bisbee's account, which as my colleagues admit, was made into a JPMorgan Chase account right here in New York because Bisbee directed that that be where it be transferred. That was their choice as to where to transfer it. Five days later, our Capita filed for bankruptcy in the Southern District of New York, availing itself of this court's laws. On that day, our Capita representatives speaking to Bisbee said, we note that we have enough money on deposit with you to cover your deposits with us. And they said, we will withdraw only $20 million from our placement balance, which at the time was $30 million, and keep $10 million with you. Ten days later, this deposit contract. So you're saying in your claim for avoidance of the transfer, you do allege that the transfer itself was wrongful. And so even if the other side is right that the purposeful use of the forum needs to be the wrongful act, then that's met for the avoidance claim. But in the context of the breach of contract claim, doesn't that assume that the initial transfer was lawful and that Bisbee breached when it didn't return the money after the fact? It doesn't require that the, let me, there's two responses to that. First, your honor, we disagree with them on the state of New York law. The conduct itself that is done in New York does not itself need to be wrongful, and I'll talk about that in a second. When we talk about what the New York Court of Appeals said in the Leachy decision that was referred to from this court. But, so they're wrong about that. But the conduct itself here was wrongful, because the creation of this contract was done for the purpose of creating this set off right. Judge Lane reached that conclusion, and he said, the court concludes that the undisputed facts demonstrate that the debts incurred by Bisbee were for the purposes of obtaining a set off right. The allegation is that it was a preferential transfer. It wasn't a notified loan, or Islamic Sharia compliant. Correct. But, I take it we've said that you have to think about personal jurisdiction claim by claim. So when we talk about the breach of contract claim, the allegation there, if you're seeking to enforce the contract because there was a breach, doesn't that assume that actually the transfer was lawful? So like, isn't your argument this is a unlawful preferential transfer, but even if it's not, that there's a breach of contract? Your Honor, we make the preferential transfer allegation in the alternative, but we pled from the very beginning. Our complaint alleges that the entirety was part of a scheme to prefer this compatriot bank in Bahrain to all other creditors. When our capita and Bisbee, and the court found this to be the case, that our capita and Bisbee was fully aware of our capita's crumbling financial condition. Our capita obviously knew its own financial condition and filed for bankruptcy only five days later. And then two weeks later, when the placement was due, Bisbee said, we'll note that we have an equal amount. And then four months after that, three months after that, Bisbee said, now we're setting off these two amounts against each other. So you're saying the act of the forum was unlawful, but then you also said that it doesn't have to be. And so why don't you say something about that? Sure, Your Honor, this court referred the Leachy decision to the New York Court of Appeals to get direction from the New York Court of Appeals on the reach of section 302 of the New York CPLR, the long arm statute in New York. And in doing so, in return, what the New York Court of Appeals said is that the inquiry, as it relates to arising from, is relatively permissive. The plaintiff must merely demonstrate a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former. Jurisdiction is available under section 302 if the asserted claims are, quote, in some way arguably connected to the transaction, close quote. And then this court, in issuing its decision, which has been referred to as Leachy 3, after the New York Court of Appeals had opined on it, said that a plaintiff needs only to allege that the transfers have been used as an instrument to achieve the very wrong alleged. The very wrong alleged in our complaint, and proven by us in the courts below, is that these two institutions engaged in a course of conduct. And Judge Hellerstein was even more clear in his recitation of it. It had the direct and circumstantial, I'm sorry, he said the direct and circumstantial evidence of making Bisbee whole show that Bisbee obtained the pre-petition debt for the purpose of obtaining a set off. That's what we alleged in our complaint, and that's what we proved after discovery on an uncontroverted record. And I think it's critical for this court to recognize those factual allegations. I mean, when you say that it has to be the instrument by which the wrong was achieved, it does seem like you are agreeing that the wrongful act has to be the use of the form. I don't think it has to be wrongful in and of itself. It has to be an instrument of the wrongful act. I see what you're saying. Right. So even if they retained the money in Bahrain, the fact that they got the money that they're retaining in New York means that it still is an instrument of retaining the money, even if they sat on it in Bahrain. Correct, Your Honor. If under our facts, and let me contrast this, because Mr. Huntingwell suggested that this was just like Dow. What was the issue in Dow? In Dow, they alleged that in 2016, among many other transfers, the Dows had engaged in four deposits in New York that constituted what looked like 20% of the total deposits that were ever made into the account in Lebanon. The largest transaction, most of the money, most of the 18 million was deposited in Lebanon. And then four years later, they asked for it to be redeposited to them, to be returned to them in a New York account. And because of circumstances that existed in Lebanon at the time, the financial institution said they couldn't do it. There was a moratorium on making transfers of US dollars out of Lebanon. And so four years later, the court looked at it and said, that is not connected to the four uses of the correspondent bank account in New York to make those deposits four years prior. We're not connected enough to the wrongful conduct. The failure to return that deposit four years later when it was made on demand. Those could not be further from our facts. The facts here are crystal clear, that when the deposit was engaged and it was done with the intent and the purpose of giving Bisbee this preferential transfer, preferring it over other creditors. That's what the courts below have found. That is sufficient. So can I ask if it weren't, if you didn't have that allegation, if it were just that they made a deal by placing the money with Bisbee to the New York correspondent account, and then Bisbee just didn't pay it back. And so you just have a regular breach of contract claim, would there be personal jurisdiction? We believe there would, Your Honor, particularly given the fact that it was, the contemplation of the parties at the time was that this would be returned in 15 days back into these New York accounts. They established which New York accounts. It went from our Capita's New York account to Bisbee's New York account. And there was no suggestion that they weren't going to do that. So I think even in the absence of that allegation, and more fundamentally, even in the absence of us proving that after discovery, I think jurisdiction would still lie here. But those aren't our facts. Our facts are much more clear than that. This puts it on the spectrum, if you have Dowell, one of the spectrum where you have deposits that are completely unmoored from the four year later request to withdraw the money. And a transfer five days before a bankruptcy is filed in the US. I think we have that argument. Can I ask about the comedy question? Yes. Opposing counsel said that there is an administrative proceeding going on in Bahrain, is that true? Your Honor, I don't know what, it's hard for me to understand what they're talking about. Because they suggest in their papers that our litigation here is trying to enforce the CBB's formal directive. We didn't learn about the formal directive until four and a half years after we filed our case. We learned of it because it came up in a deposition. And I'll give the court the site because this is in the appendix at page 4290 is the deposition transcript where I was taking a deposition, Mr. Honeywell was defending it. And I said to him, this looks to us like there's some communication from the Central Bank of Bahrain. You didn't provide that to us in discovery, can you please provide it to us? And we subsequently got the formal direction from the Central Bank of Bahrain. We're not trying to enforce it. It is their defense to a plain vanilla breach of contract. They failed to return the money on March 29th when it was due. And they purport as an affirmative defense that they executed a set off three months later. The Central Bank of Bahrain told them, you can't do that. And all the courts looking at this said, that has the force of law, something they concede. And therefore, even under Bahraini law- It seems like what's being contested now is whether it's the final statement from the CBB. So I think there seems to be agreement that if the CBB does say, or issue a directive and say, you should go comply with the US Bankruptcy Court, then that is a requirement of Bahraini law. But there's some suggestion that that's open to debate as to whether that's the CBB's final word. Do we have anything in the record that indicates that it's a tentative judgment and not a final judgment? There's nothing that suggests it's tentative. And the suggestion that the CBB has, we heard this today, has never enforced it. I don't know what that means. What the CBB said is, you need to litigate this in the United States, in the United States Bankruptcy Court, under the United States Bankruptcy Code. Now, Bisbee didn't commence that litigation as they were directed to do, but we did. That's what we've been doing for the last decade, is litigating the propriety of their actions in the United States Bankruptcy Court, and now in the Second Circuit, under the United States Bankruptcy Code. So I don't know what the CBB would do to enforce, given the fact that what they directed to happen, the commencement of a litigation, either return the money, or at your option, commence litigation in the US. That answers the question in our mind. There's nothing to enforce because that litigation is happening at our insistence. Now- You've said, even under Iranian law, doesn't Iranian law control the commercial transaction here? It controls the contract, your honor, but there's one overlay where the bankruptcy code is critical to recognize. And that is, because our capita, at the time the set off was attempted, because our capita was a debtor in a US bankruptcy case, then section 553 of So Bahraini law governs the contract, but to effectuate a set off against the debtor in a US case, they also have to comply with the US Bankruptcy Code, section 553. It would appear that under Bahrainian law, there could be no pre-judgment interest, because there can be no interest under Sharia compliant statutes. Your honor, we cited in our papers, and we think the bankruptcy court and the district court got this right, when they looked at Bahrainian law, and in particular the provisions of Bahrainian law that deal with exactly this issue, and they analogized the concept of damages for failure to pay. That's what the Bahrainian law permits and authorizes. That's an analogy. The district court goes through all these authorities that talk about how you get damages for breach of contract and so on. But we have a specific ruling from the Islamic Accounting Board about a delay in paying a debt. The Islamic Accounting Board says it is not permitted to make a judicial command that a debtor in default to pay financial compensation in the form of either cash or of other consideration for a delay in settling his debt. So the CBP has said that Bahraini law requires everybody to comply with the rulings of the Islamic Accounting Board, and that seems very specific, that you don't get consideration for a delay in settling a debt. That's what prejudgment interest does, is it not? Your honor, prejudgment interest compensates for the denial of, for the failure to return the money when it is due. Right. But to be clear, Sharia law permits, and expressly permits, the payment of compensation for use of money, you just can't call it interest. Is that what you sought in the bankruptcy court? It is, your honor. Sharia compliant compensation for delay, or did you seek the 9% interest that's available under New York law? Your honor, we sought- Because at this point, with ten years, then that's probably going to dwarf the judgment, if there is a judgment. Up to the point of judgment, your honor, it's a large sum. And let me be clear about, I think there's one factual point that I think is critical to understand. Our capital was a Sharia compliant entity, and so when it borrowed money in the bankruptcy case, what we would refer to as borrowing money, it paid debtor in possession financing fees and profit margin on that at 12%. So it paid, because it didn't have $10 million from Bisbee, it had to borrow that $10 million from somebody else. And it paid 12% interest for that. So I get that, it was not interest. It wasn't interest, your honor, but it's compensation for the use of money. And article 223- Under which you can essentially have what might effectively be considered interest because you have a markup for paying at a later date. But I just want to know what you think about this Islamic accounting board standard that specifically says, it doesn't say you can't charge interest. It says you're not permitted to make a demand on a debtor in default to pay financial compensation in the form of either cash or of other consideration for a delay in settling his debt. So it sounds like you could have liability for the debt to begin with. But you're not allowed to demand compensation just for the delay in paying the debt. So these transactions we have between the banks, okay, they make a deal up front to buy commodities and then sell them back in a markup and then it effectively ends up establishing a debt that you might describe as interest. But I have a very specific standard from the Islamic accounting board that says you can't do that. You can't have a kind of a markup when you're trying to compensate the other party for a delay in paying a debt. And your honor, there are two responses I want to offer to that. First, Sharia law is a gap filling idea. That where if Bahraini law doesn't speak to it, Sharia law then fills that gap. There are two provisions, Article 188 and Article 223 of the Bahraini Civil Code that are cited in our papers. They're at SPA 65 in the special appendix. Both of those provisions of Bahraini law allow for the profit for the payment of the profit that the wrongdoer, the- All right, so Article 188 says when the person has received in good faith that which is not due to him, he is bound to restitute that which he has received. If he has received it in bad faith, he is bound to restitute in addition the interest and profit that he has gained. Or that he has failed to gain by neglect of the thing unduly received from the date of payment or from the date he became of bad faith. So it sounds like if you gain profit, if you gain interest, you have to pay it back in restitution. But that's not- The next clause, though, says, your honor, or that he has failed to gain by neglect on the thing unduly received. So to the extent that they just sat on the money, put it in a mattress, they would still be obligated to pay profit on that. And that's what the court below did. And Article 223 is- But that's restitution. So that's establishing the debt, right? So if somebody has received something that's not due to him, he has to return everything back to the person to whom it was unjustly taken, including maybe some interest payments that might be included there, but that's restitution. That doesn't speak to this question about, if you establish that he owes you that money, and then he takes a year to pay it back, do you get interest on that year's payment? And I think, your honor, it does speak to that very thing, that if they've acted in bad faith, meaning they've breached our contract here, they engaged in this scheme, that they're obligated to pay not just the principal. And I think it would be an extraordinary result, particularly because we can't ignore the fact that Bisbee itself, when they proposed a pre-judgment interest award, they proposed pre-judgment interest. They just wanted it to be at the federal judgment rate, and not at anything close to the interest rate that the company itself, like Capita, borrowed money at in real time. They proposed interest at the federal judgment rate. Do we know what the Bahraini courts do when there's a request for pre-judgment interest? We, your honor, we don't have, I don't think there's any evidence in the record with respect to that issue. But it would be truly extraordinary, given the fact that we are now a decade after we filed this complaint, and we've prosecuted this as aggressively as we could possibly prosecute it. The notion that they would get away with just having to return the principal amount, that should strike the court as completely unfair, inequitable to all of the our Capita creditors, who were denied that same recovery, who haven't had the benefit of this money for that period of time. Who had to borrow at 12% profit rate those same dollars, because they chose not to return the money when it was due, not to follow the direction that we were unaware of from the Central Bank of Bahrain and return it, but instead to hold on to it. The idea that they would get away, I don't think that's consistent. We don't believe that's in any way consistent with Bahraini law. Is there a common key concern about our placing a interest overlay over a transaction that has been entered into between people in a country in which it is illegal to charge interest? Your Honor, I don't believe there is. And the reason there isn't is they have these mechanisms to comply with Sharia to pay the economic equivalent of interest. We do, that's what I'm saying is the dip facility that we had here complied with Sharia because it called what you and I would call interest, it called it profit. It was a fixed amount of profit. This contract had what you and I would call interest. It just calls it profit. They paid $2,000 of profit on a $10 million investment that was deposited for two weeks. They have the exact same concept, they just call it profit. So just to clarify, your reaction to this Islamic accounting board standard about procrastinating debtor is that, okay, Sharia does not allow interest, but we only look to this as a gap-filling measure. And you think these other provisions of Bahraini law allow for essentially interest. We do. So we never get to that. We do, Your Honor. And I think- Bahraini Central Bank has said that banks need to comply with standards of the Islamic accounting board. Has it not? It has, Your Honor, but again, those standards, those are gap-filling standards. And here, I think we have a clear direction from the Bahraini Civil Code that provides this. They didn't put in expert testimony that said that this would be impermissible in Bahrain. We pointed to the Bahraini Civil Code, and what I would suggest is common sense, that you can't hold somebody's money for 10 years without compensating them. And we looked to what would be comparable profit margins that the parties would have negotiated and asked for 9%. And the court settled at 9%. And in fact, the court struck the application of the New York interest law, recognizing, I can't get into Judge Lane's head, but he struck our request that you apply the 9% interest. And instead, he found that there were many other reasons to apply it, including, and I think most critically, the fact that this debtor, by being deprived of this money, had to borrow it at 12% profit. Unless Your Honors have any questions, I appreciate Your Honor's time, and we would urge the court to affirm the courts below. Okay, thank you very much, Mr. LeBlanc. We'll turn back to Mr. Honeywell on rebuttal. Thank you, Your Honor. Sharia is not gap filling. As we say in our papers, the entire Bahraini Civil Code is subject to Sharia. Interest is forbidden. It is reba. We say that in our Islamic finance expert report. The interest is permitted, but there are mechanisms that serve the same function, right? For compensation. Time value of money, right? That's why we have all of these trades between your clients. I would disagree on the time value of money. What is common sense in the US is not in Sharia. There is not compensation for delay. And that's, I'll say enough on that. Unless Your Honor- They have a deal to hold on to commodities for some period of time, and then they pay. They buy it back at a markup later. And even though we might consider that a loan, you're saying that is not interest. Yeah, under these kinds of contracts. But could the district court award something like that for the ten year period in which you failed to compensate the other side? No, because that's a commercial transaction, and they agree it's specifically designed to be a commodity transaction, and it's deemed profit on a purchase. And how do you respond to Mr. LeBlanc's citation of Article 188 and other provisions of the Bahraini Civil Code? Those are about what Your Honor was hinting at. That's for restitution. That's for actual profit. That's for actual property wrongfully received. Not interest. Across the board, Sharia prohibits interest. Do we have anything in the record about what Bahraini courts do when they have a case like this? There's nothing- Is there a delay in payment? No, we have the expert reports about interest generally being prohibited. But nothing about Bahraini courts. Finally, I do want to make a very specific point. We expected the committee to talk about the receiving the wire from New York for the purpose of obtaining set off. Let's be extremely clear. That is based, those findings by both the bankruptcy court and the district court were specifically as to a provision of the bankruptcy code known as Section 553A3C. That provision kicks in only when a bankruptcy court is asked to rule on whether a set off claim is permitted. And that is a statutory basis in the bankruptcy code for disallowing someone's attempt to obtain set off in a bankruptcy case. It is not a cause of action. It is not a jurisdictional statute. It is unique to the bankruptcy code. So we anticipated them to say that, but we have to be very precise as to what this intent provision is. It is only the basis for disallowing a claim. And they raised that late in the case. It's the basis for disallowing a claim, but it means that it's not a genuine transaction if it's made for that purpose, right? It means that it's avoidable under the bankruptcy code if it's made with that intent. No, not at all. And they kept blending preference. The preference claim was not ruled on on summary judgment. The preference claim is actually not at issue in this appeal except on the jurisdiction. I mentioned that about different claims, but just to get at this. I mean, if in fact the parties made the transfer with the purpose of effectuating a preferential transfer, that would be a wrongful act, would it not? No, it comes into play only if a party goes to the bankruptcy court and says, I want set off. I'm before this bankruptcy court. I want set off. The only way that finding about intent or purpose comes into play is under section 553, that specific provision. Then the court gets to look into intent and purpose. They did not cite 553A3C in their complaint. He implies that they did. They did not. It is not a cause of action. It's only if you're already before the court. So they're trying to finesse this factual finding under 553A3C. I don't understand why it matters if it's a cause of action. So you were saying a moment ago that the use of the forum has to be wrongful. And he gets up and says, well, we've alleged that it's all a wrongful scheme that they made this transfer using the New York correspondent account as part of a scheme to get preferences over other creditors. And that's what we're seeking compensation for with our claim. So why doesn't that satisfy your standard of saying that it's part of the wrongful act? Because you look at the complaint, you look at what the relief is that they're actually seeking. None of these counts in their complaint talk about this at all. It only came up later when the bankruptcy court already concluded it had jurisdiction after the district court. So it sounds like you're saying it's waived because they brought it up at a later point. But I guess if it were not brought up at a later point, would it satisfy your standard about the activity in the forum giving rise to the claim? If they baked it into their original complaint, maybe we could have a discussion. But they didn't. It's not part of the relief they're seeking. And again, it only comes up in a bankruptcy case once you're already there. And what they're doing is they're waving a wand and saying the later ruling, after jurisdiction was found, the later rulings under 553 somehow are the basis for jurisdiction. They're doing everything. They're mushing it all together. They're putting the cart before the horse. And it also goes to the comedy point, in our opinion, because notice that he said, once it was in the bankruptcy court, section 553 applies. That's exactly our point. If this dispute stayed in Bahrain, and if they litigated it, if they kept going in the regulatory proceeding, obviously section 553 wouldn't apply. That is our main comedy point, is this dispute has been hauled into the U.S. courts. And they suddenly are using all these equitable principles under 553 and a statutory basis for disallowance under 553A through C, and suddenly saying it belongs here. And that's why we really want to be clear on this point, because they're taking these pure statutory bases for disallowing claims and trying to make it ex post facto a jurisdictional argument. We will also point out that I know it's under a higher standard of review, but we fundamentally disagree with the factual finding that this was part of the scheme. If you look at the factual record, the second they filed bankruptcy, both parties went ballistic against each other and tried to collect. They say, you owe me everything under our contract, and our capital said, you owe everything under our contract, and they went at it. That is not a scheme. They were actually incredibly disputatious. Our client did not expect the bankruptcy. It never happens in Bahrain, and the factual record is crystal clear that there is no bankruptcy proceeding in Bahrain. How could they do this for purposes of obtaining set off if they didn't expect them to file bankruptcy? They didn't think it was possible. They were shocked. I think we have that argument. Yeah. Thank you very much. Mr., do you want to make one last point? I would like to say just on the interest point that all of these reasons why it shouldn't be here is exactly why 9% shouldn't apply. That is a New York rate, and all of the indicia for concluding the 9% rate were based on US factors, what they invested in the US, the US investment returns. Is your objection to the rate or to the charging interest at all? Both. We believe there should be no interest at all, but if there's going to be interest, then it certainly shouldn't be 9%. And he tried to say, well, you argued- What should it be? We argued for zero, the federal rates. I understand, but now you're suggesting that there might be an alternative number. Well, we pose it only, the federal rate only as an alternative. As a fundamental principle, we think there should be zero, but if there's going to be, and he tried to make issue of it that we pleaded that in the alternative, but that was just in the alternative. It should not be 9%. Okay, thank you very much. Mr. Honeywell, the case is submitted. Thank you, Your Honor.